ADAM B. WOLF (Cal. Bar No. 215914)
BRANDON M. WISE*
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Tel: 415.766.3544
Facsimile: 415.840.9435
Email: awolf@peifferwolf.com
Email: bwise@peifferwolf.com

John R. Parker, Jr. (Cal. Bar. No. 257761)
**ALMEIDA LAW GROUP LLC**
3550 Watt Avenue, Suite 140
Sacramento, California 95821
Tel: (916) 616-2936
Email: jrparker@almeidalawgroup.com

[*Additional counsel on signature page*]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| LIZ JOHNSON, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>MUBI, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**<br><br>**1.    VIOLATION OF THE VIDEO PROTECTION PRIVACY ACT, 18 U.S.C. § 2710** |

## **PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff Liz Johnson, individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendant Mubi, Inc. ("Defendant" or "Mubi") for violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Plaintiff's claims arise from Defendant's practice of knowingly disclosing to third parties, including, upon information and good faith belief, Meta Platforms, Inc. ("Facebook"), X Corp. (f/k/a Twitter) ("X Corp."), and TikTok Inc. ("TikTok"), data containing Plaintiff's and other digital-subscribers (i) personally identifiable information and (ii) the computer files containing video viewing history ("Video Media") (collectively, "Personal Viewing Information"). Plaintiff's allegations are made on personal knowledge as to Plaintiff and their own acts and upon information and good faith belief as to all other matters.

## **NATURE OF THE ACTION**

1.     This is a consumer digital privacy class action complaint against Mubi for violating the VPPA by disclosing its digital subscribers' identities and Video Media to Facebook and other third parties including, but not limited to, X Corp. and TikTok, without the proper consent.

2.     The VPPA prohibits "video tape service providers," such as Mubi, from knowingly disclosing consumers' personally identifiable information, including "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider," without express consent in a stand-alone consent form.

3.     Like other businesses with an online presence, Mubi collects and shares the personal information of visitors to its website, mobile applications, and "video-on-demand" services and applications (collectively, "Streaming Products") with third parties. Defendant does this through cookies, software development kits ("SDK"), and pixels. In other words, digital subscribers to Mubi have their personal information disclosed to Defendant's third-party business partners.

4.      Pixels are computer code Mubi installed on its Streaming Products that allow it to collect users' data. More specifically, it tracks when digital subscribers open or access Mubi.

5.      Through the use of these analytics tools, Mubi tracks and discloses to third-party business partners, the digital subscribers' viewed Video Media and, most notably, unique identifying information along with requested or obtained video content. This occurs even when the digital subscriber has not shared (nor consented to share) such information.

6.      Importantly, Mubi shares the Personal Viewing Information—*i.e.*, digital subscribers' unique ID and video content viewed together as one data point. Any ordinary person can use it to quickly and easily locate, access, and view digital subscribers' corresponding account(s) and/or profile(s).

7.      Put simply, Mubi's disclosures allow third parties to know what Video Media one of its users viewed on Mubi.

8.      Thus, without telling its digital subscribers, Mubi profits handsomely from its unauthorized disclosure of its digital subscribers' Personal Viewing Information to third parties. It does so at the expense of its digital subscribers' privacy and their statutory rights under the VPPA.

9.      Because Mubi digital subscribers are ***not*** informed about this dissemination of their Personal Viewing Information—indeed, it is automatic and invisible—they cannot exercise reasonable judgment to defend themselves against the highly personal ways Mubi has used and continues to use data it has about them to make money for itself.

10.      Mubi chose to disregard Plaintiff's and millions of others of its digital subscribers' statutorily protected privacy rights by releasing their sensitive data to third parties.

11.      Accordingly, Plaintiff brings this class action for legal and equitable remedies to redress and put a stop to Mubi's practices of intentionally disclosing its

digital subscribers' Personal Viewing Information to Facebook, X Corp., TikTok, or any other third parties in knowing violation of VPPA.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Video Privacy Protection Act, 18 U.S.C. § 2710.

13.     This Court also has jurisdiction under 28 U.S.C. § 1332(d) because this action is a class action in which the aggregate amount in controversy for the proposed Class (defined below) exceeds $5,000,000, and at least one member of the Class is a citizen of a state different from that of Defendant.

14.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because Mubi does business in and is subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred in or emanated from this District.

## THE PARTIES

15.     Plaintiff Liz Johnson ("Johnson") is an adult citizen of the State of Illinois and is domiciled in the State of Illinois.

16.     Plaintiff Johnson began a digital subscription to Mubi in or about October 2022 and maintained the subscription until approximately May 2023.

17.     Plaintiff Johnson has had a Facebook account from approximately 2009 to the present.

18.     During the relevant time period, Plaintiff Johnson used their Mubi digital subscription to view Video Media through the Mubi website while logged into their Facebook account. By doing so, Plaintiff Johnson's Personal Viewing Information was disclosed to third parties pursuant to the systematic process described herein.

19.     Plaintiff Johnson never gave Defendant express written consent to disclose their Personal Viewing Information.

20. Defendant Mubi, Inc.:

    a. Is a subsidiary of Mubi UK Limited, a privately owned multinational conglomerate headquartered in London, United Kingdom.

    b. Maintains its principal address at 215 Park Avenue South, Fl. 12 in New York, New York 10003.

    c. As a privately-owned company, Mubi does not release subscriber numbers. A 2022 interview with Mubi's founder Efe Çakarel, included a claim of "12 million members."[1]

    d. Is a streaming platform that provides a broad selection of video content.

    e. Is used by numerous United States digital media viewers.

    f. Through Mubi.com and App, Defendant delivers and, indeed, is in the business of delivering countless hours of video content to its digital subscribers.

## FACTUAL ALLEGATIONS

### A.    Background of the Video Privacy Protection Act

21. The VPPA generally prohibits the knowing disclosure of a customer's video rental or sale records without the informed, written consent of the customer in a form "distinct and separate from any form setting forth other legal or financial obligations." Under the statute, the Court may award actual damages (but not less than liquidated damages of $2,500.00 per person), punitive damages, equitable relief, and attorney's fees.

22. The VPPA was initially passed in 1988 for the explicit purpose of protecting the privacy of individuals' and their families' video rental, purchase and viewing data. Leading up to its enactment, members of the United States Senate

---

[1] *See* "MUBI Founder on Evolving Into a Studio, Building Global Cinemas and Outbidding Competitors: 'We Paid an Irrational Amount for 'Decision to Leave'', available at https://variety.com/2022/film/global/mubi-strategy-efe-cakarel-toronto-decision-to-leave-1235369417/ (last accessed October 2023)

warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

23.    Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials. As Senator Patrick Leahy and the late Senator Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 7-8 (1988) (statements of Sens. Simon & Leahy, respectively).

24.    In proposing the Video and Library Privacy Protection Act (later codified as the VPPA), Senator Leahy stated that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our own homes. And it protects the selection of books that we choose to read." 134 Cong. Rec. S5399 (May 10, 1988). Thus, the personal nature of such information and the need to protect it from disclosure is the inspiration of the statute: "[t]hese activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id*.

25.    While these statements rang true in 1988 when the VPPA was passed, the importance of legislation like the VPPA in the modern era of data mining from online activities is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking,

video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."3F[2]

26.    In this case, Mubi chose to deprive Plaintiff and the Class members of that right by knowingly and systematically disclosing their Personal Viewing Information to unauthorized third parties without providing notice to (let alone obtaining consent from) anyone, as explained herein.

**B.    Mubi's Digital Subscriptions**

27.    To register for Mubi, users create a profile and/or account with Mubi. Mubi users provide their personal information, including but not limited to their name, email address, address or postal code, and payment method(s).

28.    Defendant operates the Mubi Streaming Products in the United States. The Streaming Products are available on a broad range of devices, including mobile phones, smart televisions, gaming consoles, etc.

29.    On information and belief, all digital subscribers provide Defendant with their IP address, which is a unique number assigned to all information technology connected devices, that informs Defendant as to subscribers' city, zip code and physical location.

30.    Digital subscribers may provide to Mubi the identifier on the device and/or cookies stored on the device used to view video content on a Mubi Streaming Product.

31.    When opening an account, Mubi does not adequately disclose to its digital subscribers that it will share their Personal Viewing Information with third parties. Digital subscribers are also not asked to consent to such information sharing upon opening an account.

---

[2] *See* Committee on the Judiciary, Subcommittee on Privacy, Technology and the Law, The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, https://www.judiciary.senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21st-century (last accessed October 2023).

32.    After becoming a digital subscriber, viewers have access to a variety of Mubi Video Media through the Mubi Streaming Products.

33.    Notably, once a digital subscriber signs in and watches Mubi Video Media, the digital subscriber is not provided with any notification that their Personal Viewing Information is being shared. Similarly, Defendant also fails to obtain digital subscribers' written consent to collect their Personal Viewing Information "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," as the VPPA requires.

**C.    Mubi Admits It Collects & Discloses Certain Personal Information of Digital Subscribers to Third Parties but Fails to Advise It Discloses Personal Viewing Information, as Required Under the VPPA.**

34.    The operative Privacy Policy for Mubi states that it collects "Personal Data" from its users:

> In order to process your registration, membership, trial, subscription(s), or other use of the Services, it is necessary to collect, receive, and/or store personal data from you. This includes, but is not limited to:
>
> (i) Information provided by you: We collect information you provide to us which may include, but is not limited to, your name, email address, address or postal code, payment method(s), and telephone number. We may also collect information when you choose to provide ratings, make lists, write reviews, or otherwise create content or interact with the Services. We collect this information in a number of ways, including when you enter it while registering for an account, use our service, interact with our customer service, or participate in surveys or marketing promotions;
>
> (ii) Information collected automatically: We collect information about you and your use of our service, your location, your interactions with us and our advertising, as well as information regarding your network, network devices, and your computer or other MUBI-capable

devices you might use to access our service (such as gaming systems, smart TVs, mobile devices, set top boxes, and other streaming media devices). This information may include, but is not limited to, your activity on or interaction with the MUBI or MUBI GO Services, such as title selections, shows you have watched, ticket redemptions, and search queries; your interactions with our emails and app notifications, and with our messages through push notifications and online messaging channels; details of your interactions with our customer service, such as the date, time and reason for contacting us, transcripts of any chat or email conversations; device IDs or other unique identifiers, including for your network devices, and devices that are MUBI-enabled on your Wi-Fi network; resettable device identifiers (also known as advertising identifiers), such as those on mobile devices, tablets, and streaming media devices that include such identifiers (see the "Cookies, Web Beacons, and other Technologies" section below for more information); device and software characteristics (such as type, operating system version, and configuration), connection information including type (wifi, cellular), statistics on page views, referring source (for example, referral URLs), IP address (which may tell us your general location), browser and standard web server log information; information collected via the use of cookies, web beacons and other technologies, including ad data (such as information on the availability and delivery of ads, the site URL, as well as the date and time).

(iii) Information collected from partners: We collect information from other companies with whom you have a relationship ("Partners"). Based on the services you use, these Partners may include but are not limited: your TV or internet service provider, or other streaming media device providers who make our service available on their device; mobile phone carriers or other companies who provide services to you and collect payment for the MUBI Services for distribution to us or provide pre-paid promotions for the MUBI service. The information Partners provide us varies depending on the nature of the

Partner services, and may include: search queries; service activation information such as your email address or other contact information;

IP addresses, device IDs or other unique identifiers, as well as associated pre-paid promotion, billing and user interface information, that support user authentication, the MUBI service registration experience, Partner payment processing, and the presentation of MUBI content to you through portions of the Partner user platforms.

(iv) Information from other sources: We also obtain information from other sources. We protect this information according to the practices described in this Privacy Policy, plus any additional restrictions imposed by the source of the data. These sources vary over time, but may include, without limitation: service providers that help us determine a location based on your IP address in order to customize our service and for other uses consistent with this Privacy Policy; security service providers who provide us with information to secure our systems, prevent fraud and help us protect the security of MUBI user accounts; payment service providers who provide us with payment or balance information, or updates to that information, based on their relationship with you; online and offline data providers, from which we obtain aggregated demographic, interest-based and online advertising related data; publicly-available sources such as publicly available posts on social media platforms and information available through public databases associating IP addresses with internet service providers (ISPs).[3]

35.    Mubi discloses in its Privacy Policy that they automatically "use and permit selected third parties to use web beacons (usually in combination with cookies) to compile aggregate information about your site usage and your interaction with email and other communications to measure performance and to provide content and advertisements that are more relevant to you. A web beacon (also called a web bug, clear GIF or pixel tag) can be embedded in online content,

---

[3] *See* https://mubi.com/en/privacy_policy (last accessed October 2023)

videos and emails, and allows a server to read certain types of information from your device, to know when you have viewed the beacon and the IP address of your device."5F[4]

36.    Importantly, nowhere in Mubi's Terms of Service or Privacy Policy is it disclosed that it will share digital subscribers' private and protected Personal Viewing Information with third parties, including but not limited to Facebook, X Corp., and TikTok.

**D.    How Mubi Disseminates Digital Subscribers' Personal Viewing Information.**

**1.    Tracking Pixels**

37.    Websites and apps use Facebook, and other third parties, including but not limited to X Corp. and TikTok pixel(s) and SDK(s) (collectively "Tracking Code"), to collect information about user's devices and activities and send that to third parties.

38.    Tracking Code is an invisible tool that tracks consumers' actions on the Mubi Streaming Products and shares information with unauthorized third parties.

39.    Mubi installed Tracking Code on Mubi Streaming Products, which enables the Streaming Product to disclose Plaintiff's and Class Members' Personal Viewing Information to third parties, because it benefits financially from the advertising and information services that stem from use of the Tracking Code. When a Mubi digital subscriber enters the website or other Streaming Product and watches Video Media on a Mubi Streaming Product, the Streaming Product sends certain information about the viewer, including, but not limited to, their identity and the media content the digital subscriber watched, to unauthorized third parties. Specifically, Mubi sends the video content name, and, most notably, the viewers' unique ID to third parties.

---

[4] *See id.*

1          **2.       Unique ID's**

2          40.     Third parties, such as Facebook, X Corp., and TikTok, use unique and

3    persistent identifiers that are assigned to each user. With a user's Unique ID, any

4    ordinary person can look up a user's profile.

5          41.     Specifically for Facebook, when a Facebook user with one or more

6    personally identifiable FID cookies on their browser views Video Media from a

7    Mubi Streaming Product, that product, through its computer code, causes the user's

8    identity and viewed Video Media to be transmitted to Facebook by the user's

9    Streaming Product of choice. This transmission is not the digital subscriber's

10   decision but results from Defendant's purposeful use of its Facebook tracking pixels

11   by incorporating those pixels and code into the Mubi Streaming Product. Defendant

12   could easily program the Streaming Product so that this information is not

13   automatically transmitted to Facebook when a subscriber views Video Media.

14   However, it is not Defendant's financial interest to do so because it benefits

15   financially by providing this highly sought-after information.

16         42.     Notably, while Facebook can easily identify any individual on its

17   Facebook platform with only their unique FID, so too can any ordinary person who

18   comes into possession of an FID. Facebook admits as much on its website. Indeed,

19   ordinary persons who come into possession of the FID can connect to any Facebook

20   profile. Simply put, with only an FID and the video content name and URL—all of

21   which Defendant knowingly and readily provides to Facebook without any consent

22   from the digital subscribers—any ordinary person could learn the identity of the

23   digital subscriber and the specific video or media content they requested on a Mubi

24   Streaming Product.

25         43.     At all relevant times, Mubi knew that the Facebook pixel disclosed

26   Personal Viewing Information to Facebook. This was evidenced from, among other

27   things, the functionality of the pixel, including that it enabled Defendant to show

28   targeted advertising to its digital subscribers based on the products those digital

subscribers had previously viewed on a Streaming Product, including Video Media consumption, for which Defendant received financial remuneration.

44.    Similarly, other third parties, including but not limited to X Corp. and TikTok, had similar functions to the Facebook FID described above.

**E.    Mubi Unlawfully Discloses Its Digital Subscribers' Personal Viewing Information to Unauthorized Third Parties.**

45.    Mubi maintains a vast digital database comprised of its digital subscribers' Personal Viewing Information, including the names and email addresses of each digital subscriber and information reflecting the Video Media that each of its digital subscribers viewed.

46.    Mubi is **_not_** sharing anonymized, non-personally identifiable data with third parties. To the contrary, the data it discloses is tied to unique identifiers that track specific users. Importantly, the recipients of the Personal Viewing Information—Facebook, X Corp., TikTok, etc.—receive the Personal Viewing Information as one data point. Defendant has thus monetized its database by disclosing its digital subscribers' Personal Viewing Information to third parties in a manner allowing it to make a direct connection—without the consent of its digital subscribers and to the detriment of their legally protected privacy rights.

47.    Critically, the Personal Viewing Information Defendant discloses to unauthorized third parties allows those third parties to build from scratch or cross-reference and add to the data it already has in their own detailed profiles for its own users, adding to its trove of personally identifiable data.

1    48.    These factual allegations are corroborated by publicly available

2   evidence. For instance, as shown in the screenshot below, a user visits Mubi and

3   clicks on a movie titled "COPYCAT" and watches.

4



*Pictured above: The Mubi.com page for the 2015 movie "COPYCAT" (taken from Mubi on or about October 20, 2023).*

49.    As demonstrated below, once the user clicks on and watches the video,

Mubi sends the content name of the video the digital subscriber watched, the URL,

and the digital subscriber's FID to Facebook.

*Pictured above: HTTP single communication session sent from the device to Facebook, reveals the video name, URL and the viewer's FID (c_user field)*

50.     As a result of Mubi's data compiling and sharing practices, Defendant has knowingly disclosed to Facebook and other third parties, including but not limited to X Corp. and TikTok, for its own personal profit the Personal Viewing Information of Defendant's digital subscribers, together with additional sensitive personal information.

51.     Mubi does not seek its digital subscribers' prior written consent to the disclosure of their Personal Viewing Information (in writing or otherwise), and its customers remain unaware that their Personal Viewing Information and other sensitive data is being disclosed to unauthorized third parties.

CASE NO.

PLAINTIFF'S ORIGINAL
COMPLAINT AND JURY DEMAND

52.    By disclosing its digital subscribers' Personal Viewing Information to unauthorized third parties – which undeniably reveals their identity and the specific video materials they requested from Defendant's website—Defendant has intentionally and knowingly violated the VPPA.

**F.    Disclosing Personal Viewing Information is Not Necessary.**

53.    Tracking pixels are not necessary for Defendant to operate Mubi's Streaming Products. They are deployed on Defendant's website for the sole purpose of enriching Defendant.

54.    Even if an online content provider found it useful to integrate Tracking Code, Defendant is not required to disclose Personal Viewing Information to third parties. In any event, if Defendant wanted to do so, it must first comply with the strict requirements of VPPA, which it failed to do.

**G.    Plaintiff's Experience**

55.    Plaintiff Liz Johnson was a digital subscriber of Mubi from approximately October 2022 to May 2023.

56.    Plaintiff Johnson became a digital subscriber of Mubi by providing, among other information, their name, address, email address, IP address (which informs Defendant as to the city and zip code they reside in as well as their physical location), and any cookies associated with their device. As part of their subscription, they receive emails and other communications from Mubi.

57.    Plaintiff Johnson has had a Facebook account since approximately 2009.

58.    From approximately October 2022 to May 2023, Plaintiff Johnson viewed Video Media via Mubi Streaming Products.

59.    Plaintiff Johnson never consented, agreed, authorized, or otherwise permitted Defendant to disclose their Personal Viewing Information to third parties.

60.     Plaintiff Johnson has never been provided any written notice that Defendant discloses its digital subscribers' Personal Viewing Information, or any means of opting out of such disclosures of their Personal Viewing Information.

61.     Defendant nonetheless knowingly disclosed Plaintiff Johnson's Personal Viewing Information to third parties.

62.     Plaintiff Johnson is entitled by law to privacy in their Personal Viewing Information.

63.     Defendant's disclosure of their Personal Viewing Information deprived Plaintiff Johnson of the full set of benefits to which they are entitled.

64.     Plaintiff Johnson did not discover that Defendant disclosed their Personal Viewing Information to unauthorized third parties until 2023.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this action individually and on behalf of all others similarly situated as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (the "Class"):

> All persons in the United States who: (1) were registered users of an online website, mobile application, or any video-on-demand service or application owned, controlled, and/or operated by Mubi; and (2) who viewed videos on an online website, mobile application, or any video-on-demand service or application owned, controlled, and/or operated by Mubi.

66.     Excluded from the Class are Defendant, their past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 USC § 455(b) and their immediate families.

67.     **<u>Numerosity</u>.** Members of the Class are so numerous and geographically dispersed that joinder of all members of the Class is impracticable. Plaintiff believes that there are millions of members of the Class widely dispersed

throughout the United States. Class members can be identified from Defendant's records.

68.     **Typicality.** Plaintiff's claims are typical of the claims of members of the Class. Plaintiff and members of the Class were harmed by the same wrongful conduct by Defendant in that Defendant caused Personal Viewing Information to be disclosed to third parties without obtaining express written consent. Their claims are based on the same legal theories as the claims of other Class members.

69.     **Adequacy.** Plaintiff will fairly and adequately protect and represent the interests of the members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class. Plaintiff is represented by counsel with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically.

70.     **Commonality & Predominance.** Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Classes include:

a.     Whether Defendant knowingly disclosed Class members' Personal Viewing Information to Facebook and other third parties, including but not limited to X Corp. and TikTok;

b.     Whether the information disclosed to Facebook concerning Class members' Personal Viewing Information constitutes personally identifiable information under the VPPA;

c.     Whether Defendant's disclosure of Class members' Personal Viewing Information to Facebook and other third parties, including but not limited to X Corp. and TikTok, was knowing under the VPPA;

d.     Whether Class members consented to Defendant's disclosure of their Personal Viewing Information

1
2

to Facebook and other third parties, including but
not limited to X Corp and TikTok in the manner
required by 18 U.S.C. § 2710(b)(2)(B); and

3
4

e.    Whether the Class is entitled to damages as a result
of Defendant's conduct.

5    71.    **Superiority.** Class action treatment is a superior method for the fair

6   and efficient adjudication of the controversy. Such treatment will permit a large

7   number of similarly situated persons to prosecute their common claims in a single

8   forum simultaneously, efficiently, and without the unnecessary duplication of

9   evidence, effort, or expense that numerous individual actions would engender. The

10  benefits of proceeding through the class mechanism, including providing injured

11  persons or entities a method for obtaining redress on claims that could not

12  practicably be pursued individually, substantially outweighs potential difficulties in

13  management of this class action.

14   72.    Plaintiff knows of no special difficulty to be encountered in litigating

15  this action that would preclude its maintenance as a class action.

16                         **CLAIM FOR RELIEF**

17                      **FIRST CLAIM FOR RELIEF**

18       **Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710**

19                  (***On Behalf of Plaintiff & the Class***)

20   73.    Plaintiff incorporates the preceding paragraphs by reference as if fully

21  set forth herein.

22   74.    The VPPA prohibits a "video tape service provider" from knowingly

23  disclosing "personally identifying information" concerning any consumer to a third

24  party without the "informed, written consent (including through an electronic

25  means using the Internet) of the consumer." 18 U.S.C § 2710.

26   75.    As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider"

27  is "any person, engaged in the business, in or affecting interstate commerce, of

28

rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

76.     Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes, and those sales affect interstate or foreign commerce.

77.     As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

78.     Defendant knowingly caused Personal Viewing Information concerning Plaintiff and Class members to be disclosed to unauthorized third parties. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class member to Facebook and other third parties, including but not limited to Google Analytics and Adobe Analytics as an individual who viewed Mubi Video Media, including the specific video materials requested from the website.

79.     As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged in the preceding paragraphs, Plaintiff subscribed to a digital Mubi plan that provides Video Media content on Mubi Streaming Products. Plaintiff is thus a "consumer" under this definition.

80.     As set forth in 18 U.S.C. § 27109(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or given in advance for a set period of time not to exceed two years or until consent is withdrawn by the

consumer, whichever is sooner." Defendant failed to obtain informed, written consent under this definition.

81.    In addition, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(2)(B)(iii). It requires video tape service providers to also "provide[] an opportunity for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Defendant failed to provide an opportunity to opt out as required by the VPPA.

82.    Defendant knew that these disclosures identified Plaintiff and Class members to third parties. Defendant also knew that Plaintiff's and Class members' Personal Viewing Information was disclosed to third parties, because, *inter alia*, Defendant chose, programmed, and intended for those third parties to receive the video content name, and, most notably, the digital subscribers' specific ID.

83.    By disclosing Plaintiff's and the Class's Personal Viewing Information, Defendant violated Plaintiff's and the Class members' statutorily protected right to privacy in their video-watching habits. *See* 18 U.S.C. § 2710(c).

84.    As a result of the above violations, Defendant is liable to the Plaintiff and other Class members for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for "liquidated damages not less than $2,500 per plaintiff." Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendant in the future.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Honorable Court enter judgment in their favor and against Mubi, Inc. as follows:

a.    Determine that this action may be maintained as a class action pursuant to Fed R. Civ. P. 23(a), (b)(2), and (b)(3) and declare Plaintiff as the

representative of the Class and Plaintiff's Counsel as Class Counsel

b. For an order declaring that Defendant's conduct as described herein violates the federal VPPA, 18 U.S.C. § 2710(c)(2)(D);

c. For Defendant to pay $2,500.00 to each Plaintiff and each Class member, as provided by the VPPA, 18 U.S.C. § 2710(c)(2)(A);

d. For punitive damages, as warranted, in an amount to be determined at trial, 18 U.S.C. § 2710(c)(2)(B);

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, 18 U.S.C. § 2710(c)(2)(C).

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 24, 2023                    Respectfully submitted,

By: */s/ John R. Parker, JR.*
JOHN R. PARKER, JR.
(Cal. Bar. No. 257761)
**ALMEIDA LAW GROUP LLC**
3550 Watt Avenue, Suite 140
Sacramento, California 95821
Email: jrparker@almeidalawgroup.com

DAVID S. ALMEIDA*
BRITANY A. KABAKOV*
MATTHEW J. LANGLEY
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Telephone: 312.576.3024
Email: david@almeidalawgroup.com

britany@almeidalawgroup.com
matt@almeidalawgroup.com

ADAM B. WOLF (Cal Bar No. 215914)
BRANDON M. WISE*
**Peiffer Wolf Carr Kane Conway
& Wise, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: 415.766.3544
Facsimile: 415.840.9435
Email: awolf@peifferwolf.com
          bwise@peifferwolf.com

*Counsel for Plaintiff*

*\* Pro Hac Vice admission to be sought*